## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| DOFFERMYRE SHIELDS CANFIELD & KNOWLES, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:11-CV-00257-RWS |
| | : | |
| EDWARD L. CAIN, JR., ANNA KRISTEN WILLIAMSON, and VICTOR & VICTOR, APC, | : | |
| | : | |
| Defendants. | | |

## <u>ORDER</u>

This case comes before the Court on Defendants Cain and Williamson's Joint Motion for Summary Judgment Against Defendant Victor & Victor on the Validity of the "Assignment" [42]; Defendants Cain and Williamson's Motion to Realign the Parties [44]; Defendant Victor & Victor, APC's Motion to Stay [46]; Clarice W. Dowdle's Motion to Intervene as a Defendant under Rule 24 [60]; Victor & Victor, APC's Motion for Summary Judgment [62]; and, finally, Triton Films, Inc.'s Motion to Intervene [69]. After reviewing the record, the Court enters the following Order.

## Background

This case is an interpleader action brought by Doffermyre Shields

Canfield & Knowles, LLC ("DSC&K") pursuant to 28 U.S.C. §§ 1335, 1397,

and 2361.[1]  The facts are straightforward and almost entirely undisputed.

In January 2009, the law firm of DSC&K filed an action against H&R

Block on behalf of Defendant Cain in the Superior Court of Fulton County (the

"state court action"). (Defs.' Cain & Williamson's Statement of Material Fact

As To Which There Is No Issue To Be Tried ("Defs. C&W's SMF"), Dkt. [43]

¶ 1.) That action was filed as a renewal action and included a claim for fraud

and for punitive damages. (Id.) In April of 2010, a confidential settlement was

reached in the state court action, resulting in funds being paid to DSC&K on

behalf of Defendant Cain (the "settlement funds"). (Id. ¶ 7.) The settlement

funds are the subject of this interpleader action.

On March 26, 2009, prior to the settlement of the state court action,

Defendant Cain executed two documents in favor of Defendant Victor &

Victor, the first entitled "Priority Lien on and Assignment of Rights to

---

[1] Subsequent to filing this suit, DSC&K deposited the disputed funds into the registry of the Court and was dismissed from this action. (Order, Dkt. [34].)

Judgment/Settlement Proceeds." (Second Aff. of Robert M. Victor ("Second

Victor Aff."), Ex. A, Dkt. [51-1] at 5-7 of 7.) This document provides, in

pertinent part, the following:

### Recitals

A.  DEBTOR [Edward L. Cain, Jr.] is indebted to VICTOR & VICTOR, APC pursuant a Legal Services Agreement for legal services rendered and litigation costs advanced in various legal matters. The amount of such debt is approximately $295,000.00 as of February 28, 2009. Such debt shall continue to increase as additional services are provided by, and additional litigation costs are expended by, VICTOR & VICTOR on behalf of DEBTOR. . . .

B.  As security for the payment of the afore mentioned debt, and to induce additional legal services to be performed by VICTOR & VICTOR, DEBTOR has agreed to place a priority lien and assignment in favor of VICTOR & VICTOR, APC upon all judgment proceeds, settlement proceeds, arbitration award proceeds receivables, funds, income and other amounts due to/and or received by DEBTOR as a result of the [state court action]. . . .

D.  This Priority Lien/Assignment is designed to ensure that any and all judgment proceeds, settlement proceeds, arbitration award proceeds receivables, funds, income and other amounts due to and/or received by DEBTOR from or in connection with the [state court action] are paid first to VICTOR & VICTOR, APC to satisfy any unpaid amounts owed by DEBTOR to VICTOR & VICTOR, APC before DEBTOR receives any such funds.

3

**WHEREFORE, EDWARD L. CAIN, JR. AND VICTOR & VICTOR, APC AGREE AS FOLLOWS:**

1.  **ASSIGNMENT.** DEBTOR hereby permanently and irrevocably assigns to VICTOR & VICTOR, APC any and all judgment proceeds, settlement proceeds, arbitration award proceeds receivables, funds, income and other amounts due to and/or received by DEBTOR from or in connection with the [state court action] after attorney's fees and costs. . . .

3.  **PAYMENT.** DEBTOR hereby directs and instructs his attorney(s) in the [state court action] . . . to pay directly to VICTOR & VICTOR, APC any and all judgment proceeds, settlement proceeds, arbitration award proceeds receivables, funds, income and other amounts due to/and or received by DEBTOR from or in connection with the [state court action] after attorney's fees and costs before distributing such funds to DEBTOR. . . .

(Id.)

The second document Defendant Cain executed on March 26, 2009 is entitled "Notice of Priority Lien/Assignment on Judgment/Settlement Proceeds."[2] (C&W's SMF, Dkt. [43] ¶ 2.) This document was filed in the state court action in December 2009 (id.) and provides, among other things, the following:

---

[2] The Court hereinafter refers to the two documents executed on March 26, 2009 collectively as the "Lien/Assignment."

Plaintiff EDWARD L. CAIN, JR. hereby grants a priority lien and assignment on any and all Judgment Proceeds, Settlement Proceeds, Arbitration Award Proceeds and any and all other proceeds due to or received by Plaintiff in [the state court action] (after payment of Plaintiff's attorney's fees and costs) to Victor & Victor, APC, as set forth below:

1.   Plaintiff EDWARD L. CAIN, JR. hereby permanently and irrevocably assigns to Victor & Victor, APC any and all judgment proceeds, settlement proceeds, arbitration award proceeds receivables, funds, income and other amounts due to and/or received by Plaintiff from or in connection with the [state court action] after attorney's fees and costs.

2.   The amount due to satisfy in full all obligations of Plaintiff to Victor & Victor, APC is $295,000.00 as of February 28, 2009.  Such amount increases each month and Victor & Victor shall provide, upon request, a balance due as of the date of any such request.

3.   Plaintiff EDWARD L. CAIN, JR. hereby directs and instructs the attorney(s) for the Plaintiffs, as well as the Defendants and the attorney(s) for Defendants (or any insurance company or other person and/or entity who is or becomes responsible for payment to Plaintiff EDWARD L. CAIN, JR.) in this action to pay directly to Victor & Victor any and all judgment proceeds, settlement proceeds, arbitration award proceeds receivables, funds, income and other amounts due to and/or received by Plaintiff from or in connection with this action after attorney's fees and cost before distributing any such funds to Plaintiff. . . .

(Defs. C&W's Mot. for Summ. J. Against Def. Victor & Victor on the Validity

of the "Assignment" ("Defs.' C&W's Mot. for Summ. J."), Ex. A (Notice of

Priority Lien/Assignment on Judgment/ Settlement Proceeds), Dkt. [42-2] at 2-3 of 4.)

As the Court found in its earlier Order, Cain and Williamson were formerly married and are now divorced. (Order, Dkt. [38] at 3.) They entered into a divorce Settlement Agreement and Final Judgment and Decree of Divorce ("Divorce Judgment"), the latter of which incorporates the Settlement Agreement by reference. (Id. at 3-4.) The Settlement Agreement was executed by Defendant Cain on November 4, 2010 and by Defendant Williamson on November 5, 2010, and the Divorce Judgment was filed in the Superior Court of Forsyth County, Georgia on December 15, 2010. (Id. at 4.) In a section governing the division of property, the Settlement Agreement references Defendant Victor & Victor's possible claim to the settlement proceeds and provides as follows:

> (b)   Proceeds received from . . . Edward L. Cain, Jr. v. H&R Block, Inc., et al., Superior Court of Fulton County Civil Action No.: 2009CV-162592.
>
> The parties acknowledge that the law firm of [DSC&K] is holding in its trust account the amount of Seven Hundred Fifty Thousand Dollars ($750,000.00) which is the remaining amounts resulting from the settlement of the aforementioned legal action in which Husband was a party.

6

> The parties have agreed to satisfy in full the amounts due to:
> [certain named persons not relevant to this action]. . . .
>
> The parties acknowledge that because of a possible claim by
> Robert Victor, Esq. from the law office of Victor & Victor
> in Woodland Hills, California in the amount of $596,887.16
> (hereinafter referred to as the "Victor claim"), that
> $596,887.16 from such proceeds may not be distributed by
> the law firm of [DSC&K] until such possible claim is
> resolved. Notwithstanding, this Agreement shall serve as a
> full release by the parties authorizing the law firm of
> [DSC&K] to release the remaining funds as specifically
> enumerated below.
>
> After the aforementioned payments are made to [the named
> persons not relevant to this action], each of the parties shall
> be entitled to $10,306.42 from the remaining funds as
> equitable division of property. DSCK is hereby instructed
> to issue two separate checks in the parties' respective names
> to effectuate this division.
>
> Once the Victor claim is resolved, the remaining funds shall
> be deposited in an account in the parties' joint names . . . .

(Id.)

Defendant Victor & Victor claims an interest in the settlement proceeds

by virtue of the Lien/Assignment. Defendants Cain and Williamson contend,

however, that the Lien/Assignment is not valid as a matter of Georgia law and,

therefore, that they are entitled to the settlement funds pursuant to the terms of

the divorce Settlement Agreement.

7

## Discussion

## II.     Defendant Cain and Williamson's Motion to Realign the Parties [44]

Defendants Cain and Williamson move the Court to realign the parties such that Victor & Victor is Plaintiff and Cain and Williamson are Defendants. (See generally Defs.' Cain & Williamson's Motion to Realign the Parties, Dkt. [44].)  In support of this motion, Cain and Williamson argue that Victor & Victor is the proper Plaintiff because "[b]ut for Victor's claim, the funds would have been disbursed to Cain and Williamson pursuant to their divorce decree and settlement."  (Defs. C&W's Mot. to Realign the Parties, Dkt. [44] at 2.) They continue, "Therefore, the proper alignment of the parties is Victor as the plaintiff who bears the burden of proof in his assertion that the Lien/Assignment is valid and that he is entitled to the funds in interpleader, and Cain and Williamson as co-defendants."  (Id.; see also Reply Br. in Supp. of Mot. to Realign the Parties, Dkt. [54] at 2 ("Because Victor & Victor is claiming an interest in Cain's property pursuant to an assignment, without which the property would certainly belong to Cain, subject to the interest of Williamson, Victor must be aligned as the plaintiff.").)

8

The Court agrees with Cain and Williamson that the proper alignment of the parties to this dispute is Victor & Victor as Plaintiff and Cain and Williamson as Defendants. As Cain and Williamson argue, Victor & Victor is the proper plaintiff, as it claims an interest in funds obtained by Cain, which funds—but for Victor & Victor's claim—would be disbursed to Cain and Williamson according to their divorce Settlement Agreement. Accordingly, Cain and Williamson's Motion to Realign the Parties is **GRANTED** such that Cain and Williamson are Defendants and Victor & Victor Plaintiff.

## III.    Defendant Victor & Victor's Motion to Stay [46]

Victor & Victor moves the Court to stay this litigation pending resolution of a suit filed by Victor & Victor against Cain in the state of California. (See generally Victor & Victor's Motion to Stay [46].) In its Brief in Support of its Motion for Summary Judgment, however, Victor & Victor asserts that a final judgment now has been entered in the California suit. (Dkt. [62-2] at 3-4.) Accordingly, Victor & Victor's Motion to Stay [46] is **DENIED as moot**.

## IV.    Cain and Williamson's Joint Motion for Summary Judgment [42] & Victor & Victor's Motion for Summary Judgment [62]

9

As stated in the Background section, <u>supra</u>, Cain and Williamson and Victor & Victor cross move for summary judgment on the issue of the validity of the Lien/Assignment.  Cain and Williamson contend that the Lien/Assignment is not valid under Georgia law.  (<u>See generally</u> Br. in Supp. of Cain & Williamson's Joint Mot. for Summ. J. ("C&W's Br."), Dkt. [42-1].) They argue (1) that the Lien/Assignment is void as an attempt to assign a personal tort (<u>id.</u> at 5-80); (2) that it is not a valid legal assignment because Cain did not immediately relinquish control of the settlement proceeds (<u>id.</u> at 8-14); and (3) that the Lien/Assignment is not an enforceable equitable assignment because it is not supported by consideration (<u>id.</u> at 16).  Victor & Victor argues, on the other hand, that the Lien/Assignment is valid under Georgia law either as a statutory attorney's lien or equitable lien or as a legal or equitable assignment.  (<u>See generally</u> Victor & Victor's Br. in Supp. of its Motion for Summ. J. ("Victor & Victor's Br."), Dkt. [62-2].)  The Court considers these arguments below.

A.  <u>Is the Lien/Assignment Void as an Attempt to Assign a Personal Tort In Contravention of O.C.G.A. § 44-12-24?</u>

Cain and Williamson argue that the Lien/Assignment is void as an

10

attempt to assign a personal tort, in contravention of O.C.G.A. § 44-12-24,

which provides: "[A] right of action is assignable if it involves, directly or

indirectly, a right of property.  A right of action for personal torts or for injuries

arising from fraud to the assignor may not be assigned."  To this end, Cain and

Williamson contend that the underlying state court action included a claim for

fraud, thus precluding Cain from assigning the proceeds of the action.  (C&W's

Br., Dkt. [42-1] at 6.)

The Court disagrees.  The Court finds that the Lien/Assignment does not

run afoul of O.C.G.A. § 44-12-24 because it does not purport to assign Cain's

right of action for fraud to Victor & Victor.  On the contrary, the document

transfers to Victor & Victor "any and all judgment proceeds, settlement

proceeds . . . funds, income and other amounts due to and/or received by

[Cain]" in connection with the state court action, which action Cain pursued on

his own behalf.

The Georgia Court of Appeals appears to recognize a distinction

between assigning the right to bring a cause of action, which is prohibited

under O.C.G.A. § 44-12-24, and assigning the proceeds of the cause of action,

which is not prohibited under that provision.  For example, in Santiago v.

11

Klosik, the Court of Appeals rejected the argument that an assignment was void as an attempt to assign a right of action for personal injuries, in contravention of O.C.G.A. § 44-12-24, reasoning as follows: "The assignment at issue does not purport to authorize the appellant to bring suit against the tortfeasor to recover for Duncan's injuries *but purports only to give him an enforceable interest in any recovery Duncan may obtain as the result of her own pursuit of her personal injury claim*." 404 S.E.2d 605, 606 (Ga. Ct. App. 1991) (emphasis added). Similarly, the court has held that "assign" as used in the statute means "transfer so as to vest title in the recipient and *allow such person to sue directly*." McLanahan v. Keith, 217 S.E.2d 420, 422 (Ga. Ct. App. 1975) (emphasis added) (internal quotes and citation omitted). See also In re Carroll, 89 B.R. 1007, 1009 (Bankr. N.D. Ga. 1988) ("The 'doctor's lien' constituted a transfer of an interest in the proceeds of the claim and not of the claim itself. The 'assignment' prohibited by [O.C.G.A. § 44-12-24] is a transfer which vests title in the transferee so as to allow such person to sue directly.") (citing McLanahan, 217 S.E.2d at 420). In accordance with the foregoing authority, the Court finds that the Lien/Assignment is not void under O.C.G.A. § 44-12-24 because it does not purport to transfer to Victor & Victor

12

the right to bring Cain's suit directly but transfers, instead, only the right to the proceeds of Cain's suit.

Cain and Williamson rely on In re Estate of Sims, 578 S.E.2d 498 (Ga. Ct. App. 2003) for the proposition—contrary to that stated above—that an assignment of the proceeds of a personal tort cause of action is prohibited under O.C.G.A. § 44-12-24. (C&W's Br., Dkt. [42-1] at 6-7.) In particular, Cain and Williamson seize on the court's statement, in a footnote of the opinion, that "any general assignment of the net proceeds of a legal malpractice action sounding in tort, fraud, and seeking punitive damages would be void ab initio[.]" (Id. at 7 (quoting In re Estate of Sims, 578 S.E.2d at 503 n.2).) While this language suggests that an assignment of the proceeds of a personal tort cause of action is prohibited under § 44-12-24, other language in the opinion suggests the contrary—that the prohibition is only against assigning the right to bring the cause of action. See In re Estate of Sims, 578 S.E.2d at 503 ("To avoid legal problems, the Joint Venture did not want to take a general assignment of the claims against Rolleston *and pursue the claims in its own name* as the real party in interest *but sought to obtain the efforts of the Estate. Therefore, the Joint Venture had to have the Estate pursue the claims against*

13

*Rolleston.*" (emphasis added)).

Moreover, the holding in In re Estate of Sims is not entirely clear, but

appears to be limited to the issue of whether the Executor of the Estate waived

his commissions when he executed an assignment of any proceeds of the

Estate's legal malpractice claim to the Joint Venture, as security for the Joint

Venture's agreement to pay the Estate's litigation expenses. 578 S.E.2d at 503-

504. To answer this question, the court construed the language of the

assignment at issue to determine whether the Executor intended to waive his

commissions. Id. The court concluded he did not:

> The application of the rules of construction requires a finding that
> there was no waiver of the Executor's commissions; that he was
> entitled to collect them prior to any payment pf net proceeds to the
> Joint Venture; that the net proceeds of any recovery of the
> judgment against Rolleston remained an asset of the Estate, with
> sufficient sums limitedly assigned as security for payment to
> satisfy the promissory note and with a priority of payment of this
> debt; and that the balance of the net proceeds remaining after
> payment of the balance and interest on the promissory note was an
> asset of the Estate. The probate court erred in granting summary
> judgment to the Joint Venture and in denying it to the Executuor
> for the Estate.

Id. at 504. In light of this holding, the language upon which Cain and

Williamson rely appears to be dicta. The Court therefore finds, as stated above,

14

and in accordance with the authority cited above, that the Lien/Assignment does not violate O.C.G.A. § 44-12-24.

> B.  Is the Lien/Assignment Enforceable as a Legal or Equitable Assignment?

Cain and Williamson next argue that the Lien/Assignment is not a valid assignment under Georgia law, whether legal or equitable. (C&W's Br., Dkt. [42-1] at 8-16.) Cain and Williamson contend that the Lien/Assignment is not a valid legal assignment because Cain did not immediately relinquish control over the settlement proceeds at the time the document was executed. (Id. at 8-14.) They further contend that it cannot be enforced as an equitable assignment because the Lien/Assignment is not supported by consideration. (Id. at 14-16.) Victor & Victor disputes the foregoing and argues that the Lien/Assignment is a valid assignment both at law and in equity. (See generally Victor & Victor's Br., Dkt. [62-2] at 10-15.)

"Assignments may be either legal or equitable." Bank of Cave Springs v. Gold Kist, Inc., 327 S.E.2d 800, 802 (Ga. Ct. App. 1985). "To effect a legal assignment, there must be evidence of intent to assign or transfer the whole or part of a specific thing, debt, or chose in action, and the subject matter should

15

be sufficiently described to make it capable of being identified." Id. (internal quotes and citation omitted).  Moreover, to constitute a legal assignment, there must be intent on the part of the assignor to transfer the right "instantly, so that it will be the property of the transferee." First State Bank v. Hall Flooring Co., 118 S.E.2d 856, 857 (Ga. Ct. App. 1961).  Accordingly, where a writing does not convey a legal title, it does not constitute a legal assignment.  Id.

Similar to a legal assignment, an equitable assignment "likewise makes an absolute appropriation of, or transfer of a present interest in, a fund or chose in action to the assignee . . . ." Bank of Cave Springs, 327 S.E.2d at 802.  See also First State Bank, 118 S.E.2d at 857-58 ("In order to infer an equitable assignment, such facts and circumstances must . . . show that the parties contemplated an immediate change of ownership with respect to the particular fund in question, not a change of ownership when the fund should be collected or realized, but at the time of the transaction relied upon to constitute the assignment.").  Unlike a legal assignment, however, the subject of an equitable assignment may be "contingent interests, expectancies, and things not in esse, but resting in mere possibility . . . ." Bank of Cave Springs, 327 S.E.2d at 802. In other words, to effect an equitable assignment, "[i]t is not essential that the

16

fund assigned shall be in actual existence at the time, but it is sufficient if it exists potentially." Reid v. McRae, 9 S.E.2d 176, 180 (Ga. 1940). Whether legal or equitable, however, an assignment is a contract and therefore valid only if it possesses the requisites of any other contract, i.e., parties, subject matter, mutual assent, and consideration. Bank of Cave Springs, 327 S.E.2d at 802.

The Court agrees with Cain and Williamson that the Lien/Assignment is not a valid legal assignment, as it did not convey to Victor & Victor present title to the settlement funds at issue—those funds not being in existence at the time the Lien/Assignment was executed. The Court cannot find as a matter of law, however, that the Lien/Assignment is not a valid equitable assignment. As stated above, expectancies and things not in esse may be the subject of an equitable assignment.[3] At the same time, however, an equitable assignment,

---

[3] Cain and Williamson recognize that "an equitable assignment covers contingent interests, expectancies, and things potential," as opposed to "thing[s] in being." (C&W's Br., Dkt. [42-1] at 15 (internal quotes and citation omitted).) They further state, correctly, that an equitable assignment must contemplate an immediate change in ownership with respect to the fund at issue. (Id. at 16.) They go on to argue, however, that the Lien/Assignment at issue in this case did not contemplate an immediate change in ownership with respect to the settlement funds "because the fund in question did not exist." (Id.) If the latter were true, however, a contingent interest, expectancy, or thing potential could never be the subject of an equitable assignment,

like a legal assignment, must be supported by consideration to be enforceable. Victor & Victor contends that the Lien/Assignment is supported by consideration, namely, Victor & Victor's continuation of legal services on behalf of Cain in several matters pending in California. (See Second Aff. of Robert M. Victor ("Second Victor Aff."), Dkt. [51-1] ¶ 5 ("Cain received adequate consideration for the Priority Lien/Assignment because I agreed to continue representing him in the several matters in California for which I had been representing him for several years already.").)  Cain and Williamson contend, on the contrary, that Cain received no consideration in exchange for executing the Lien/Assignment. (See Second Aff. of Edward L. Cain, Jr. ("Second Cain Aff."), Dkt. [42-4] ¶ 3 ("In March of 2009 Robert Victor asked me to sign a document purporting to be a Notice of Lien/Assignment, which I did.  He never gave or promised me anything in exchange for my executing the document.").)  In light of this factual dispute as to whether the Lien/Assignment is supported by consideration, the Court cannot rule as a

---

which proposition is decidedly incorrect. This argument, accordingly, fails. The Court finds, based on its plain language, that the Lien/Assignment contemplated an immediate transfer of ownership regarding the potential proceeds of the state court action.

18

matter of law that it is, or is not, an enforceable equitable assignment.

C.     Is the Lien/Assignment an Enforceable Statutory or Equitable
       Lien?

As stated above, Victor & Victor argues not only that the

Lien/Assignment is enforceable as an assignment, but also that it is enforceable

as a lien.  (Victor & Victor's Br., Dkt. [62-2] at 6-10.)  In this regard, Victor &

Victor argues, first, that the Lien/Assignment is a valid statutory attorney's lien

(id. at 7, 8-9), and, second, that the Lien/Assignment should be enforced as an

equitable lien (id. at 6-7).  The Court considers each argument, in turn.

       1.     Statutory Attorney's Lien

The Court finds that the Lien/Assignment is not an enforceable statutory

attorney's lien.  Victor & Victor appears to argue, first, that the document is

enforceable as an attorney's lien under Georgia's general lien statute, O.C.G.A.

§ 44-14-320(a)(11).  (Victor & Victor's Br., Dkt. [62-2] at 7.)  Although this

general provision recognizes liens in favor of attorneys at law, "the parameters

of such liens and the rights associated with them are established under a

separate title and chapter of the Code dealing specifically with attorneys at law,

O.C.G.A. § 15-19-1 et seq." Jones v. Wellon, 514 S.E.2d 880, 881 (Ga. Ct.

19

App. 1999).  Accordingly, the enforceability of the Lien/Assignment as a statutory attorney's lien must be determined with reference to those particular Code sections.

The relevant portions of the attorney's lien statute provide as follows: "Upon actions, judgments, and decrees for money, attorneys at law shall have a lien superior to all liens except tax liens . . . ."  O.C.G.A. § 15-19-14(b).  "Upon all actions for the recovery of real or personal property and upon all judgments or decrees for the recovery of the same, attorneys at law shall have a lien for their fees *on the property recovered* superior to all liens except liens for taxes . . . ."  O.C.G.A. § 15-19-14(c) (emphasis added).

Cain and Williamson argued to the Court in their first motion for summary judgment that the Lien/Assignment is not enforceable under O.C.G.A. § 15-19-14(c) because the funds to which the document purports to attach were not recovered by Victor & Victor.  (Br. in Supp. of C&W's Joint Mot. for Summ. J. against Defendant Victor & Victor ("C&W's First Summ. J. Br."), Dkt. [14-1] at 2-3.)  Cain and Williamson are correct that an attorney's lien under O.C.G.A. § 15-19-14(c) may attach only to the "fruits of the labor of the attorney." <u>Gutter-Parker v. Pridgen</u>, 601 S.E.2d 707, 708 (Ga. Ct. App.

2004) (internal quotes and citation omitted).  Accordingly, since the proceeds

of the state court action were not procured by Victor & Victor, which did not

represent Cain in that action, they could not be the subject of a lien under this

provision.[4]

Victor & Victor argues, without any supporting authority, that unlike

O.C.G.A. § 15-19-14(c), there is no"fruits of the labor" requirement under

O.C.G.A. § 15-19-14(b), and that the Lien/Assignment therefore can be

enforced under this provision.  (Victor & Victor's Br., Dkt. [62-2] at 8-10.)

This assertion is without merit, as the Georgia Court of Appeals does not

appear to distinguish between § 15-19-14(b) and § 15-19-14(c) when applying

the "fruits of the labor" rule.  See Recoba v. State, 306 S.E.2d 713, 715 (Ga. Ct.

App. 1983) ("In order for O.C.G.A. § 15-19-14(b) . . . to apply, it must be

shown that the lien attaches to the fruits of the labor and skill of the attorney

. . . .").  Accordingly, because the settlement proceeds from the state court

---

[4] The Court ultimately denied Cain and Williamson's first motion for summary judgment on the validity of the Lien/Assignment, however, on grounds that the Lien/Assignment appeared, on its face, to be an assignment rather than merely a statutory attorney's lien.  (Order, Dkt. [38] at 13.)  Because Cain and Williamson did not argue that the Lien/Assignment was not enforceable as an assignment, the Court could not rule as a matter of law that the document was unenforceable.

action, to which the Lien/Assignment purports to attach, were not procured by the efforts of Victor & Victor, the Lien/Assignment is not enforceable as a statutory attorney's lien under Georgia law.

### 2.    Equitable Lien

The Court finds, however, that the document is enforceable as an equitable lien. "[E]quity may enforce liens created by express contracts . . . and may protect equitable rights by impressing liens in the absence of a contract." Routon v. Woodbury Banking Co., 75 S.E.2d 561, 563 (Ga. 1953). "No particular form is required for an agreement to constitute a lien. It is sufficient if it clearly indicates the intention to create a lien, the debt to secure which it is given, and the property upon which it is to take effect." Country Greens Village One Owner's Ass'n, Inc. v. Meyers, 281 S.E.2d 346, 349 (Ga. Ct. App. 1981) (internal quotes and citation omitted). "[An] [equitable] lien on specific property may be decreed whenever under the rules of equity the circumstances require this remedy." Id. (internal quotes and citations omitted).

Although the Lien/Assignment may not be enforced as a statutory attorney's lien, the Court finds that it is enforceable under the rules of equity. The Lien/Assignment clearly indicates Cain's intention of creating a Lien.

22

(See Second Robert Aff., Ex. A (Priority Lien On and Assignment of Rights to Judgment/Settlement Proceeds), Dkt. [51-1] at 5 of 7 ("Recital B") ("As security for the payment of the aforementioned debt, and to induce additional legal services to be performed by VICTOR & VICTOR, [Cain] has agreed to place a priority lien . . . in favor of VICTOR & VICTOR, APC upon all judgment proceeds, settlement proceeds . . . and other amounts due to/and or received by [Cain] as a result of the [state court action].").)  The document clearly identifies the debt for which the lien was granted.  (See id. ("Recital A") ("[Cain] is indebted to VICTOR & VICTOR, APC pursuant to a Legal Services Agreement for legal services rendered and litigation costs advanced in various legal matters.  The amount of such debt is approximatley $295,000.00 as of February 28, 2009.").)  Finally, the Lien/Assignment plainly identifies the property to which the lien is intended to attach.  (Id. ("Recital B").)  (See also Defs.' C&W's Mot. for Summ. J., Ex. A (Notice of Priority Lien/Assignment on Judgment/ Settlement Proceeds), Dkt. [42-2].)  In light of the foregoing, the Court finds as a matter of law that the Lien/Assignment is an enforceable lien in equity.

23

### D.   Conclusion

In accordance with the foregoing, the Court finds that the

Lien/Assignment is an enforceable equitable lien.  Cain and Williamson's Joint

Motion for Summary Judgment against Victor & Victor on the Validity of the

"Assignment" [42] is **DENIED**.  Victor & Victor, APC's Motion for Summary

Judgment [62] is **GRANTED**.

## IV.   **Clarice W. Dowdle's Motion to Intervene as a Defendant under Rule 24 [60]**

Clarice W. Dowdle ("Dowdle") moves to intervene in this action as a

matter of right, pursuant to Federal Rule of Civil Procedure ("Rule") 24(a)(2),

or, alternatively, permissively, pursuant to Rule 24(b)(1)(B).  (See generally

Dowdle's Mot. to Intervene as a Defendant under Rule 24 ("Dowdle's Mot. to

Intervene"), Dkt. [60].)  Dowdle contends that she is entitled to intervene

because she is a judgment creditor of Cain and Williamson and therefore has a

"direct, substantial, and legally protected interest in the subject matter of this

action and is so situated that disposition of the action may as a practical matter

impair or impede [her] ability to protect [her] interests."  (Id. at 1.)  Cain and

Williamson and Victor & Victor oppose Dowdle's motion.

"Under Rule 24(a)(2), a party is entitled to intervention as a matter of right if the party's interest in the subject matter of the litigation is direct, substantial and legally protectable." <u>Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.</u>, 425 F.3d 1308, 1311 (11th Cir. 2005) (internal quotes and citation omitted). "The proposed intervenor must show that it has an interest in the subject matter of the suit, that its ability to protect that interest may be impaired by the disposition of the suit, and that existing parties in the suit cannot adequately protect that interest." <u>Id.</u> (internal quotes and citation omitted). For purposes of this rule, a "legally protected interest is *something more than an economic interest*." <u>Id.</u> (emphasis added) (internal quotes and citation omitted). Thus, where one's interest in a suit is purely economic, that person is not entitled to intervention as a matter of right. <u>Id.</u>

The Court finds that Dowdle is not entitled to intervene as a matter of right under Rule 24(a)(2). She claims an interest in this litigation solely by virtue of a judgment she allegedly obtained against Cain and Williamson in an unrelated suit and therefore claims a purely economic interest in this action. Thus, in accordance with the foregoing authority, Dowdle does not claim a legally protected interest in the subject matter of the litigation so as to be

entitled to intervene as a matter of right.

"Permissive intervention under [Rule 24(b)] is appropriate where a party's claim or defense and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties." Mt. Hawley, 425 F.3d at 1312 (internal quotes and citation omitted). The Court finds that Dowdle is not entitled to permissive intervention because this action and Dowdle's proposed claim share no common questions of law or fact. The question of law at issue in this litigation is the enforceability of the Lien/Assignment executed by Cain in favor of Victor and Victor and purporting to attach to the funds held in interpleader. Dowdle's proposed claim is unrelated to the Lien/Assignment and instead involves her right to recover from Cain pursuant to an unrelated judgment allegedly obtained against him. As no common questions of law or fact exist between the main action and Dowdle's proposed claim, permissive intervention under Rule 24(b) is not appropriate. Dowdle's Motion to Intervene [60] therefore is **DENIED**.

## V.     Triton Films, Inc.'s Motion to Intervene [69]

Triton Films, Inc. ("Triton") moves to intervene in this action as a matter

26

of right or permissively on grounds that it is the assignee of fifty percent of Victor & Victor's right, title and interest in its claims in this action. (Triton's Mot. to Intervene, Dkt. [69] ¶ 6, 10-12.)  Triton explains, however, that "[i]n the absence of compelling circumstances, such as an abandonment by [Victor & Victor] of its claim or some act causing Triton to exercise its lien rights, Triton has no interest in otherwise participating in the lawsuit."  (Id. ¶ 10.) Thus, Triton seeks to intervene in this case to protect its interest in Victor & Victor's claims, in the event Victor & Victor's representation proves to be ineffective.

In light of the Court's ruling granting Victor & Victor's Motion for Summary Judgment (Part IV, supra), the concerns underlying Triton's Motion to Intervene are no longer relevant.  Accordingly, Triton's Motion to Intervene [69] is **DENIED as moot**.

## Conclusion

In accordance with the foregoing, Cain and Williamson's Joint Motion for Summary Judgment Against Defendant Victor & Victor on the Validity of the "Assignment" [42] is **DENIED**; Cain and Williamson's Motion to Realign

27

the Parties [44] is **GRANTED**; Victor & Victor, APC's Motion to Stay [46] is

**DENIED**; Clarice W. Dowdle's Motion to Intervene as a Defendant under Rule

24 [60] is **DENIED**; Victor & Victor's Motion for Summary Judgment [62] is

**GRANTED**; and, finally, Triton Films, Inc.'s Motion to Intervene [69] is

**DENIED as moot**.  The clerk is **DIRECTED** to enter judgment in favor of

Victor & Victor, APC and pay the funds in the registry of the Court to Victor &

Victor, APC.

 **SO ORDERED**, this _18th_ day of December, 2012.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

28